IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **JAKYRA NELLEM**, <br><br> Plaintiff, <br><br> vs. <br><br> **RICH PRODUCTS CORPORATION,** a Delaware corporation, <br><br> Defendant. | Case No.: 1:23-cv-01706 <br><br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Jakyra Nellem ("Plaintiff"), through counsel, for her complaint against Defendant, Rich Products Corporation ("Defendant"), states:

### NATURE OF THE CASE

1. This is an action to recover statutory damages arising out of Defendant's unlawful collection, use, retention and disclosure of the personal biometric identifiers and biometric information of Plaintiff in violation of the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 (2008).

### THE PARTIES

2. Plaintiff is a natural person who is domiciled in Illinois.

3. Defendant is a corporation organized and existing in the state of Delaware.

4. Defendant maintains its principal place of business and nerve center at 1 Robert Rich Way, Buffalo, New York 14213.

5. Defendant operates a multinational food products business which engages in business in over 100 countries and employs over 11,000 people.

1

6. In Illinois, Defendant operates a factory located at 21511 Division Street, Crest Hill, Illinois 60403.

7. Defendant is registered to do business in Illinois and maintains a registered agent at 350 S Northwest Highway #300, Park Ridge, Illinois 60068.

**JURISDICTION AND VENUE**

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) as the matter in controversy exceeds $75,000.00[1] exclusive of punitive damages, and/or interest and costs, and is between citizens of different States.

9. This Court has personal jurisdiction over Defendant because it has a registered agent in Illinois and it conducts substantial business in Illinois.

10. Venue lies in this District pursuant to 28 U.S.C. §1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District and Defendant resides and may be found in this District.

**RELEVANT FACTS**

11. Plaintiff was employed by Defendant for three months in 2020 to work at Defendant's Crest Hill factory.

12. During the course of her employment by Defendant, Plaintiff was required as a condition of employment to have her fingerprints scanned and stored in a system Defendant maintained for time tracking and employee authentication.

13. While there are tremendous benefits to using biometric time clocks in the workplace, there are also serious risks. Unlike key fobs or identification cards—which can be changed or replaced if stolen or compromised—fingerprints are unique, permanent biometric

---

[1] Plaintiff seeks statutory, liquidated damages of $1,000 to $5,000 for each violation of BIPA and alleges that there were not less than 240 BIPA violations.

identifiers associated with the employee. This exposes employees to serious and irreversible privacy risks. For example, if a fingerprint database is hacked, breached, or otherwise exposed, employees have no means by which to prevent identity theft and unauthorized tracking. If a database containing fingerprints or other sensitive, proprietary biometric data is hacked, breached, or otherwise exposed – like in the recent Yahoo, eBay, Equifax, Uber, Home Depot, MyFitnessPal, Panera, Whole Foods, Chipotle, Omni Hotels & Resorts, Trump Hotels, and Facebook/Cambridge Analytica data breaches or misuses – employees have no means by which to prevent identity theft, unauthorized tracking or other unlawful or improper use of this highly personal and private information.

14. A nefarious market already exists for biometric data. Hackers and identity thieves have targeted Aadhaar, the largest biometric database in the world, which contains the personal and biometric data – including fingerprints, iris scans, and a facial photograph – of over a billion Indian citizens. *See* Vidhi Doshi, *A Security Breach in India Has Left a Billion People at Risk of Identity Theft*, The Washington Post (Jan. 4, 2018).[2]

15. In late 2007, a biometrics company called Pay by Touch - which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions - filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records - which, like other unique biometric identifiers, can be linked to people's sensitive financial and personal data - could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who had used that company's fingerprint scanners were completely unaware that the scanners were not

---

[2] Available at https://www.washingtonpost.com/news/worldviews/wp/2018/01/04/a-security-breach-in-india-has-left-a-billion-people-at-risk-of-identity-theft/?utm_term=.b3c70259fl38.

actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

16. Recognizing the need to protect its citizens from situations like these, in 2008, Illinois enacted BIPA in light of the "very serious need [for] protections for the citizens of Illinois when it comes to [their] biometric information."[3]

17. BIPA was enacted with the understanding that "the full ramifications of biometric technology are not fully known." 740 ILCS 14/5(f). The legislature specifically found that persons who have their biometrics taken unlawfully are at increased risk of future injury. *Id.*

18. Biometrics are unlike other unique identifiers used to access finances or other sensitive information. "For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions."[4]

19. To address this legitimate concern, Section 15(b) of BIPA provides that:

> No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:
>
> (1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

---

[3] 95th Ill. Gen. Assem. House Proceedings, May 30, 2008, at 249 (statement of Representative Ryg), available at http://www.ilga.gov/house/transcripts/htrans95/09500276.pdf.

[4] 740 ILCS 14/5(c).

    (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.[5]

20. For BIPA purposes, a "biometric identifier" is a personal feature that is unique to an individual and specifically includes fingerprints.

21. BIPA defines "biometric information" as "any information, regardless of how it is captured, converted, stored, or shared, based upon an individual's biometric identifier used to identify the individual."[6]

22. BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it *first*:

    (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;

    (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

    (3) receives a written release executed by the subject of the biometric identifier or biometric information."

740 ILCS 14/15(b).

23. BIPA specifically applies to employees who work in the State of Illinois.

24. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS 14/10.

---

[5] 740 ILCS 14/15(b).
[6] *Id.*

5

25. Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and—most importantly here—fingerprints. *See* 740 ILCS 14/10. Biometric information is separately defined to include any information based on an identifier that is used to identify an individual. *See id*.

26. BIPA also establishes standards for how employers must handle Illinois employees' biometric identifiers and biometric information. *See* 740 ILCS 14/15(c)-(d). BIPA makes it unlawful for companies to "sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information." Furthermore, no company may "disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information unless":

    (1) the person or customer consents to the disclosure or redisclosure;

    (2) the disclosure or redisclosure completes a financial transaction requested or authorized by the person or customer;

    (3) the disclosure or redisclosure is required by State or federal law or municipal ordinance; or

    (4) the disclosure is required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction.

*See* 740 ILCS 14/15(c)-(d).

27. Ultimately, the BIPA is simply an informed consent statute. Its narrowly tailored provisions place no absolute bar on the collection, sending, transmitting or communicating of biometric data. For example, the BIPA does not limit what kinds of biometric data may be collected, sent, transmitted, or stored. Nor does the BIPA limit to whom biometric data may be collected, sent, transmitted, or stored. The BIPA simply mandates that entities wishing to engage in that conduct must make proper disclosures and implement certain reasonable safeguards.

**FACTS RELATED TO PLAINTIFF**

28. For at least three months in 2020, Plaintiff was required to scan her fingerprints using timeclock equipment provided by Defendant at the start and conclusion of each day and each time she left and returned from lunch or break.

29. Plaintiff's fingerprints were scanned no less than four times each day that she worked for Defendant and at least 240 times over the course of her employment by Defendant.

30. Defendant never informed Plaintiff of the specific limited purposes or length of time for which the Defendant collected, stored, or used fingerprints.

31. Similarly, Defendant never informed Plaintiff of any biometric data retention policy it developed, nor whether it will ever permanently delete fingerprints.

32. Plaintiff never signed a written release allowing Defendant to collect or store her fingerprints.

33. Plaintiff has continuously and repeatedly been exposed to the risks and harmful conditions created by Defendant's repeated violations of the BIPA alleged herein.

34. Defendant knew, or was reckless in not knowing, that the biometric timekeeping systems that it used would be subject to the provisions of BIPA, a law in effect since 2008, yet wholly failed to comply with the statute.

35. Alternatively, Defendant negligently failed to comply with BIPA.

36. Plaintiff now seeks statutory, liquidated damages under BIPA as compensation for the Defendant's multiple violations of BIPA.

37. This lawsuit constitutes Plaintiffs' one and only chance at compensation for Defendant's violations of BIPA. Depending on how technology evolves years into the future, losing control of and ownership over very personal identifiers could have untold harmful

7

consequences. The Illinois legislature concluded that the increased risk of future harm is a compensable loss under BIPA, which is its right. *Rosenbach v. Six Flags Entm't Corp.,* 2019 IL 123186, ¶ 35, 129 N.E.3d 1197, 1206 citing 740 ILCS 14/5(c) (noting increased risk of identity theft should biometrics be compromised); *Dillon v. Evanston Hosp.,* 199 Ill. 2d 483, 507, 771 N.E.2d 357, 372 (2002) (Illinois Supreme Court finding risk of future injury compensable as an element of damages in medical malpractice case). The legislature's decision is particularly reasonable given that the statute of limitations on BIPA claims presumably runs from the date of the collection of biometrics, whereas the future injury may not occur until after the statute has run.

38. Given that this harm is difficult to quantify, assignment of liquidated damages is appropriate.

## COUNT ONE

### Violation of §15(b) of BIPA
### [Failure to Obtain Informed Written Consent and Release Before Obtaining Biometric Identifiers or Information]

39. Plaintiff restates paragraphs 1 through 38 of the complaint as if set out here in full.

40. BIPA requires companies to obtain informed written consent from employees before acquiring their biometric data. Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject…in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject…in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information…" 740 ILCS 14/15(b) (emphasis added).

8

41. Defendant failed to comply with these BIPA mandates.

42. Defendant is an entity registered to do business in Illinois and thus it qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

43. Plaintiff is an individual who had "biometric identifiers" (in the form of fingerprints) collected by Defendant. *See* 740 ILCS 14/10.

44. The Plaintiff's biometric identifiers were used to identify her and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

45. Defendant systematically and automatically collected, used, stored, and disclosed biometric identifiers and/or biometric information of Plaintiff without first obtaining the written release required by 740 ILCS 14/15(b)(3).

46. Defendant did not inform Plaintiff in writing of the specific length of term for which biometric identifiers and/or biometric information were being collected, stored, used and disseminated as required by 740 ILCS 14/15(b)(1)-(2).

47. By collecting, storing, and using Plaintiff's biometric identifiers and biometric information as described herein, each Defendant violated Plaintiff's privacy in her biometric identifiers or biometric information as set forth in BIPA *each time* the Defendant collected, stored or used Plaintiff's or the Class's biometric identifier. *See* 740 ILCS 14/1, *et seq*.

48. Defendant knew, or was reckless in not knowing, that the biometric timekeeping systems used would be subject to the provisions of BIPA, a law in effect since 2008, yet completely failed to comply with the statute.

49. Alternatively, Defendant negligently failed to comply with BIPA.

50. Plaintiff seeks statutory, liquidated damages of $5,000 for each willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory,

liquidated damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## COUNT TWO

### Violation of §15(d) of BIPA
### [Disclosure of Biometric Identifiers and Information Without Obtaining Consent]

51. Plaintiff restates paragraphs 1 through 38 of the complaint as if set out here in full.

52. BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(1).

53. Defendant failed to comply with this BIPA mandate.

54. Defendant is an entity registered to do business in Illinois and thus it qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

55. Plaintiff is an individual who had her "biometric identifiers" (in the form of her fingerprints) collected by Defendant, as explained in detail above. *See* 740 ILCS 14/10.

56. Plaintiff's biometric identifiers were used to identify her and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

57. Upon information and belief, by utilizing a biometric time clock, Defendant systematically and automatically disclosed, redisclosed, or otherwise disseminated biometric identifiers and/or biometric information of Plaintiff to at least the payroll company hired by the Defendant without obtaining the consent required by 740 ILCS 14/15(d)(1).

58. By disclosing, redisclosing, or otherwise disseminating Plaintiff's biometric identifiers and biometric information without her consent as described herein, Defendant violated BIPA *each time* there was a disclosure, redisclosure or dissemination of the Plaintiff's biometric

10

identifiers in violation of Plaintiff's right to privacy in her biometric identifiers or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq*.

59. Defendant knew, or was reckless in not knowing, that the biometric timekeeping systems used would be subject to the provisions of BIPA, a law in effect since 2008, yet completely failed to comply with the statute.

60. Alternatively, Defendant negligently failed to comply with BIPA.

61. Plaintiff seeks statutory damages of $5,000 for each willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, respectfully request that the Court enter judgment in her favor and against Defendant for statutory, liquidated damages for each of Defendant's violations of the BIPA, pursuant to 740 ILCS 14/20; and award Plaintiff reasonable litigation expenses and attorneys' fees.

## JURY DEMAND

Plaintiff hereby respectfully demands a trial by jury.

Dated: March 20, 2023                 *Respectfully submitted,*

**JAKYRA NELLEM**

*/s/ Nick Wooten*
DC Law, PLLC
1012 W. Anderson Lane
Austin, Texas 78757
(512) 220-1800
nick@texasjustice.com

Rusty A. Payton
DC Law, PLLC
20 North Clark Street
Suite 3300
Chicago, Illinois 60602
(773) 682-5210
rusty@chicagojustice.law

Adam J. Feuer
DC Law, PLLC
20 North Clark Street
Suite 3300
Chicago, Illinois 60602
(312) 648-6143

Majdi Hijazin
DC Law, PLLC
20 North Clark Street
Suite 3300
Chicago, Illinois 60602
(773) 544-7668


*Counsel for Plaintiff*